Argued January 27, decided February 9, 1909.

**BOYLE *v.* BOYLE.**

[99 Pac. 658.]

GIFTS—EVIDENCE—SUFFICIENCY.

Evidence *held* to show that land, bought by decedent's sister and conveyed to him, was paid for with money which he gave to her for the purpose of buying the land as her own property.

From Douglas: JAMES W. HAMILTON, Judge.

This is a suit by Ida M. Boyle against J. L. Boyle and others, to establish plaintiff's title to certain lands in Douglas County, Oregon. From a decree in favor of plaintiff, defendants appeal. AFFIRMED.

For appellant there was a brief over the names of *Mr. Commodore S. Jackson* and *Mr. C. I. Leavengood,* with an oral argument by *Mr. Jackson.*

For respondent there was a brief and oral arguments by *Messrs. Coshow & Rice.*

MR. JUSTICE BEAN delivered the opinion of the court.

This is a suit brought by plaintiff to establish her title to 47 acres of land in Douglas County. The facts are these: Plaintiff's mother and father separated when she was a small child. She remained with her mother, and the father lived with one of his sons. By mutual arrangements between the sons, one of them—Lee Boyle —was to look after and provide for plaintiff and her mother, and one other son was to support the father. Lee contributed, from time to time, to the support of plaintiff and her mother, and when plaintiff was 16 or 17 years of age he sent her a check for $550, with which the land in controversy was purchased, in October, 1900, the title being taken in the name of her brother Lee, at her request. She immediately assumed possession and control of the property, and ever since exercised acts of ownership and control over it. Her brother Lee died in September, 1905, unmarried and without issue, and her brothers and sisters thereupon claim an interest in the land in question as his heirs, and hence this suit.

There is no controversy or dispute as to the law governing the case. The only question is whether the money with which the land was purchased belonged to plaintiff or her brother. Plaintiff testifies that prior to the purchase she had had some correspondence with her brother, who then lived in Baker City, about going to school, and he offered to furnish her money to do so, if she so desired. Before the matter was finally settled she learned from Mr. Raymond, a neighbor, that he desired to sell the property in question, which adjoined a small tract belonging to her mother, and at the request of herself and mother, Raymond agreed to give her two weeks in which to write to her brother, which she did, saying she preferred the land rather than attend school. Within the two weeks she received a letter from her brother, inclosing a check for $550, the amount for which Raymond offered to sell the property. This letter, the testimony discloses, has been lost, and cannot, after diligent search and inquiry, be found or produced at the trial; but plaintiff testifies that in it her brother stated that the money was intended for her, and she could use it to pay her expenses at school, or purchase the land, as she preferred. She is corroborated by her mother, Mr. and Mrs. Raymond, and Mrs. Amanda Poole, all of whom testify that they read the letter, and that its contents were as stated by plaintiff. Mr. Raymond, who seems to be a disinterested witness, testifies that he concluded to sell the land in order to purchase other land; that he went to sell it to one Clough, but that plaintiff saw him, and asked him to stop at her home, and give herself and mother the first chance to buy; that he stopped at the house and talked the matter over with them, and at their request promised to give them two weeks in which to communicate with plaintiff's brother; that within the two weeks he was notified by plaintiff that she had received a letter from her brother, inclosing a check with which to purchase the property; that the

letter was shown to and read by him in the presence and hearing of his wife; that it stated that plaintiff could take the check, and go to school, or she could buy the land, which ever she thought best; that she told him she would take the land; that, as he was starting to town to execute the deed, he inquired in whose name it should be made, and was told by plaintiff to have it made in the name of her brother Lee; that he rather demurred thereto, and inquired her reasons for doing so, and she told him that she was only a child, and was afraid "Uncle Ike and Joe" would get it away from her; that after the making of the deed plaintiff has had the control and management of the property, and was regarded and recognized in the community as the owner, and it was generally considered to belong to her. Mrs. Raymond confirms her husband's statement as to the contents of the letter, and so does Mrs. Poole.

There is no direct testimony to contradict this theory of the case, and the circumstances relied upon by defendant are not necessarily inconsistent therewith. It is unnecessary to further detail the testimony. It is sufficient that, after a careful examination of the entire record, we are of the opinion that the decree of the court below should be affirmed, and it is so ordered.

AFFIRMED.